IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MILLER, | ) | CASE NO. 1:11CV00233 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Michael Miller ("Miller") seeks judicial review of the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his application for social

security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2(b)(1).

Miller's arguments pertain to the ALJ's consideration of Miller's alleged cognitive

disorder and/or schizoid personality disorder and the ALJ's application of *res judicata* pursuant

to *Drummond v. Comm'r of Soc. Sec*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-

4(6), 1998 SSR LEXIS 5 (June 1, 1998) ("*Drummond* ruling").  Pl's Brief at 10.[1]

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

---

[1] Under Local Rule 7.1(f), the page limitation for memoranda for matters assigned to the administrative track is 20
pages.  The font size of Oaks' brief on the merits is less than twelve points in size, as evidenced by the small
typeface throughout the brief.  In the future, counsel shall use twelve point font when complying with Local Rule
7.1(f).

## I.  Procedural History

**A.      Current Claims**

Miller filed an application for Supplemental Security Income Benefits ("SSI") on March 7, 2007, (Tr. 66) and an application for Disability Insurance Benefits ("DIB") on March 19, 2007.  Tr. 67, 198-201.  In both applications, Miller alleged a disability onset date of April 1, 2001.  Tr. 198.  The state agency denied Miller's claims on August 7, 2007, (Tr. 88-91) and upon reconsideration on November 7, 2007.  Tr. 97-102.  On November 30, 2007, Miller requested a hearing.  Tr. 103.  On September 29, 2009, a hearing was held before Administrative Law Judge Peter Beekman (the "ALJ").  Tr. 21-47.

In a decision dated October 27, 2009, the ALJ determined that Miller had not been under a disability from April 1, 2001, through the date of the decision.  Tr. 20.  Miller requested review of the ALJ's decision by the Appeals Council on December 22, 2009, (Tr. 6-7) and filed a representative brief on June 29, 2010.  Tr. 273-277.  On November 29, 2010, the Appeals Council denied Miller's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

**B.      Prior Claims**

Miller filed prior claims for DIB and SSI on March 25, 2002 ("2002 claims").  Tr. 54.  Those claims were adjudicated and heard by Administrative Law Judge Lawrence E. Blatnik ("ALJ Blatnik") and ALJ Blatnik issued a decision on October 28, 2004, finding Miller not disabled under the Social Security Act.  Tr. 51-65.  These 2002 claims relate to Miller's *res judicata* argument in this case.

Additionally, Miller had DIB and SSI claims denied in August, 2006 ("2006 claims"). Tr. 24, 46, 124-129, 133-141. At the September 29, 2009, hearing, Miller requested that these 2006 claims be re-opened. Tr. 24. The record is unclear as to the resolution of this request. However, Miller does not base the instant appeal on these May, 2006 claims. Accordingly, the 2006 claims are not relevant to this Court's review of the instant appeal.

## II. Evidence

### A.      Personal and Vocational Evidence

Miller was born on October 27, 1966. Tr. 198. He graduated from high school. Tr. 23, 549. His work experience includes work as a fast food worker, dishwasher, office cleaning worker, dry cleaning worker, and motel pool monitor. Tr. 204, 215. At the time of the hearing, Miller was working part-time. Tr. 23-25. At one time, Miller held a full-time job for a few months. Tr. 28. At the time of the hearing, Miller was single and living independently in public housing. Tr. 27-28, 32. Before living independently, Miller resided with various family members and friends. Tr. 27-28. Following his discharge from the Navy for smoking marijuana, Miller cared for his great grandmother for a couple of years until she passed away. Tr. 27-28. Miller plays video games and watches movies for entertainment. Tr. 34. Miller indicated that he shops daily. Tr. 550. Miller utilizes public transportation. Tr. 548.

**B.     Medical Evidence[2]**

**1.     Treating Psychiatric Providers**

Miller was treated by mental health professionals at Neighboring Mental Health Services beginning on or about 2002 through the date of the 2009 hearing.  Tr. 573-612, 670-678, 737-742.  On May 17, 2006, and on July 12, 2006, Katherine Proehl, APRN ("Proehl")[3] completed, and Proehl and Dr. Ruth Martin, M.D., ("Martin") signed, Mental Functional Capacity Assessments ("2006 Assessments").[4]  Tr. 696-699.  In the July 12, 2006, report, Proehl opined that Miller was unemployable and that he had marked limitations in all categories contained in that report which included: understanding and memory; sustained concentration and persistence; social interaction; and adaption.  Tr. 696.  Proehl's opinions regarding Miller's limitations on Miller's: schizoid personality disorder and cognitive disorder not otherwise specified; very poor and loose processing; difficulty in staying on task and focusing on relevant things; reclusiveness; very poor drive and motivation; and executive functioning issues.  Tr. 697.

A review of Proehl's progress notes[5] shows that she alternated between diagnoses and changed her findings regarding the severity of Miller's mental illness.  In her November 15, 2004, progress notes, Proehl indicated that Miller was only mildly/moderately ill and her diagnosis included a dependent personality.  Tr. 593.  However, in Proehl's February 14, 2005,

---

[2] As noted *infra* in Section VI.B., the undersigned finds that the ALJ properly applied the *Drummond* ruling to the period of April 1, 2001, through October 28, 2004 (the date of ALJ Lawrence E. Blatnik's decision).  Accordingly, the medical evidence summary is generally confined to the period of October 29, 2004, through the date of the hearing.

[3] Miller has indicated that Proehl was Miller's treating psychiatric nurse.  Pl's Brief at 5; Pl's Reply Brief at 2.

[4] Although Martin signed the 2006 Assessments, Miller testified that he did not recall ever seeing Martin.  Tr. 31.

[5] The progress notes reviewed cover the period beginning in 2004 through 2009.  See FN 2 *supra*.

notes, rather than her earlier "personality" diagnosis of dependent personality, Proehl's diagnosis changed to mixed personality traits.  Tr. 591.  On May 17, 2006, Proehl's progress notes included an indication that Miller was moderately ill and a provisional diagnosis of schizoid personality disorder.  Tr. 587.  On July 12, 2006, Proehl's diagnoses included schizoid personality disorder and cognitive disorder not otherwise specified.  Tr. 583.  Then, about two weeks later, on July 26, 2006, Proehl's diagnoses included cognitive disorder not otherwise specified, personality disorder not otherwise specified, and "fetal alcohol/narcotic affect (?)," but did not include a diagnosis of schizoid personality disorder.  Tr. 585.  On March 14, 2007, Proehl's "personality" diagnosis was again personality disorder not otherwise specified rather than schizoid personality disorder.  Tr. 581.  She indicated in her March 14, 2007, progress notes that Miller was markedly ill and also maintained the cognitive disorder not otherwise specified diagnosis.  Tr. 581.  A month later, on April 11, 2007, Proehl indicated that Miller was moderately/markedly ill, rather than markedly ill.  Tr. 579.  Then, on May 9, 2007, Proehl went back to a finding that Miller was markedly ill, rather than moderately/markedly ill but did not change her April 11, 2007 diagnoses, i.e., cognitive disorder not otherwise specified disorder and personality disorder not otherwise specified.  Tr. 577.   In her progress notes, through the remainder of 2007, 2008 and 2009, Proehl did not opine that Miller had schizoid personality disorder and her findings regarding the severity of Miller's mental illness varied from moderately ill, moderately/markedly ill to markedly ill.  Tr. 575, 657, 659, 672, 675, 678, 740, 742.

In her treatment notes from 2007 and 2009, Proehl noted that Miller's part-time job was going ok.  Tr. 574, 576, 739, 741.

## 2.        Consultative Examining Physician

Clinical psychologist Dr. Richard C. Halas, M.A. ("Halas") examined Miller on May 22, 2007.[6]  Tr. 548.  Halas observed Miller's appearance to be reasonably neat and well-kempt.  Tr. 548.  Halas indicated that Miller's interaction with him was rather flat, hesitant and tentative.  Tr. 548.  However, Halas noted that Miller's degree of cooperation and motivation was high.  Tr. 458.  Halas also assessed Miller as being more independent than dependent.  Tr. 548.

Halas noted that Miller's speech pattern was slow, hesitant and constricted. Tr. 548. However, he noted that Miller's flow of conversation and thought were good overall.  Tr. 548.

Halas described Miller's affect and mood as poor.  Tr. 548-549.  Halas noted that Miller indicated that he had difficulty sleeping and admitted to feelings of hopelessness, helplessness, and worthlessness.  Tr. 549.  Also, Halas noted that Miller's psychomotor activity during the examination reflected retardation.  Tr. 549.

Halas indicated that Miller exhibited extremely high levels of anxiety during the examination and appeared to be slightly apprehensive but did not appear specifically phobic.  Tr. 549.  Halas also noted that Miller was not actively hallucinatory and did not have any symptoms or characteristics consistent with thought disorder or psychotic process.  Tr. 549.

When opining as to Miller's "sensorium and cognitive functioning," Halas stated that Miller's overall quality of consciousness was good.  Tr. 549.  Miller did not show signs of confusion or a lack of awareness.  Tr. 549.

Halas' diagnoses of Miller included major depression, recurrent type, and anxiety disorder not otherwise specified. Tr. 550.  Additionally, Halas noted that Miller's psychosocial

---

[6] Halas also examined Miller in 2002.  Tr. 319-325.  However, as set forth in FN 2 *supra*, a summary of Halas' medical reports prior to October 28, 2004 is not necessary.

stressors include employment concerns, health issues, relationship concerns, and dependency on his sister.  Tr. 551.  Halas diagnosed Miller with a GAF score of 55.[7]

Halas rated Miller's work related abilities.  Tr. 551.  Specifically, he opined that Miller had mild limitations in his mental ability to relate to others, including peers, supervisors, and the general public.  Tr. 551.  Halas opined that Miller's psychological symptoms place restrictions on Miller in this area of functioning.  Tr. 551.

Halas also opined that Miller was not limited in his ability to follow through with simple one and two-step instructions and/or directions and Miller was not limited in his ability to maintain attention to do simple, repetitive tasks.  Tr. 551.  Halas noted that Miller's previous testing indicated average intelligence.  Tr. 551.

Halas opined that Miller had moderate limitations in his ability to withstand stresses and pressures associated with most day-to-day work settings.  Tr. 551.  Halas indicated that Miller's psychological issues were likely to become quickly exacerbated if he is placed in a setting that is stressful, fast-paced or demanding.  Tr. 551.

### 3.       Agency Reviewing Physician

On July 25, 2007, Dr. Douglas Pawlarczyk, Ph.D. ("Pawlarczyk") completed a Mental RFC ("MRFC") and Psychiatric Review Technique ("PRT").  Tr. 552-569.  Dr. David Dietz Ph.D. ("Dietz") reviewed and confirmed Pawlarczyk's assessment.  Tr. 649.  Under the *Drummond* ruling, Pawlarczyk adopted as his MRFC the October 28, 2004, MRFC of ALJ Blatnik.  Tr. 554.  Further, Pawlarczyk's PRT reflects the fact that he did not find that Miller's

---

[7] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

impairments met or equaled a Listing[8] for mental disorders.  Tr. 556-568.  Pawlarczyk noted that Miller suffered from depression but opined that Miller did not meet Listing 12.04.[9]  Tr. 559.  Also, although Pawlarczyk noted that Miller suffered from a personality disorder, Pawlarczyk opined that Miller did not meet Listing 12.08.[10]  Tr. 563.  Based on his review of Miller's medical records, Pawlarczyk found that Miller had mild limitations in activities of daily living; moderate limitations in social functioning and in concentration, persistence or pace; and had experienced no episodes of decompensation of extended duration.  Tr. 566.

**C.**  **Testimonial Evidence**

**1.**  **Miller's Testimony**

Miller testified that he was working a part-time job at the time of the hearing.  Tr. 29.  He indicated that the only problem he had while at work was asthma related.  Tr. 25.  He could not provide the ALJ with a reason why he worked only nineteen hours per week.  Tr. 25.  He was working approximately four and one half hours per day, four days per week.  Tr. 29.  Miller obtained his job with the assistance of the Bureau of Vocational Rehabilitation.  Tr. 30.

Miller testified that he considered his asthma, allergies and major depression to be his disabling conditions.  Tr. 25.  He testified that he had been seeing a psychiatrist since 2002.  Tr. 26.  When questioned by his attorney about treatment by Dr. Ruth Martin, Miller testified that he could not recall having seen her.  Tr. 31.  Miller testified that he had never gone to the emergency room for his asthma and had never been hospitalized for his depression or psychiatric

---

[8] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[9] Listing 12.04 is Affective Disorders.  20 C.F.R. pt. 404, Subpt. P, App. 1.

[10] Listing 12.08 is Personality Disorders.  20 C.F.R. pt. 404, Subpt. P, App. 1.

reasons. Tr. 25-26, 36. Miller testified that he felt his depression was related to having experienced a lot of deaths in his family.[11] Tr. 26-27. When asked whether he thought his condition had declined since October, 2004, Miller testified that he felt his asthma had gotten worse, but he did not feel that his mental functioning had changed. Tr. 34-35. Miller testified that the medication that he was taking helped with his mental condition. Tr. 35.

Miller testified that he has limited social interaction. Tr. 32. He testified that he usually just sticks to himself and plays video games or watches television or movies. Tr. 32. He testified that, after his discharge from the Navy,[12] he cared for his great grandmother for a couple of years until she passed away. Tr. 27. Then he lived with a friend's grandmother but when his mother was released from prison he lived with her until she passed away.[13] Tr. 27-28. He then resided with his sister for a period of time and testified that he was living independently in public housing at the time of the hearing. Tr. 28, 32.

### 2. Medical Expert's Testimony

Dr. Gottfried Spring, M.D. ("Gottfried") reviewed Miller's medical record, asked questions of Miller at the hearing and testified at the hearing. Tr. 35-44, 105. He noted that there was nothing in the medical records from Dr. Martin and specifically stated "[i]n essence, there is nothing from a Board Certified psychiatrist in the record." Tr. 38. Ultimately, after a series of questions and, at times, unclear answers regarding Miller's medical records and opinions regarding Miller's condition, Gottfried opined that Miller had a condition that equaled the listings. Tr. 38-42. When asked to explain the basis for his opinion, Gottfried provided some

---

[11] In addition to testifying about a number of other deaths in his family, Miller testified that he had just learned the day before the hearing that his brother had passed away. He planned to attend the funeral following the hearing. Tr. 32.

[12] Miller testified that he was discharged from the Navy for smoking marijuana. Tr. 28. He indicated that he wanted out of the Navy. Tr. 28.

[13] He testified that his mother had been in prison for forging prescription drugs. Tr. 27-28.

reasons that included his opinion that Miller "had a psychological – thinking – his thinking process, he blocks," "[h]e sort of – that's been described as significantly looseness of association in a sense that he'll ramble, that's been repeated, the relevancy sometime is not clear," and Gottfried did not think Miller was a malingerer.  Tr. 42-43.  He ultimately stated that his opinion was based on "circumstantial evidence" but he felt comfortable with his conclusions.  Tr. 42-43.

Following this testimony, Miller's counsel directed Gottfried to Proehl and Martin's Assessment dated July 12, 2006.  Tr. 43.  Gottfried indicated: "Oh no, I haven't seen this.  Oh yeah, that's good.  She's right.  I didn't think – schizoid personality, that's exactly right.  I know it well."  Tr. 43.  Following counsel's presentation of this Assessment to Gottfried and based on the indication therein that Miller suffered from schizoid personality, Gottfried then opined that Miller satisfied Listings 12.04 and 12.08.  Tr. 44.

### 3.  Vocational Expert's Testimony

Vocational expert Evelyn Sindelar ("VE") testified that Miller's past relevant work included his then current job at a fast food restaurant, work as a dishwasher, and work as an office cleaner.  Tr. 44-45.  The VE testified that those jobs were unskilled and she also testified as to the exertional level of each of the jobs.[14]  Tr. 44-45.  The ALJ asked the VE whether the hypothetical person described below could perform any of Miller's past work.  Tr. 45.

> A 43 year old male, with a high school education and the same work background as Miller; no exertional, postural, manipulative visual or communication limitations; needs to avoid smoke, dust and fumes; should not perform complex tasks, but can do simply routine tasks and simple repetitive tasks; should do only low stress work, i.e., no high production quotas or piece rate work; should do no work involving arbitration, negotiation or confrontation; only superficial interpersonal interactions with public, co-workers and supervisors.

---

[14] The VE indicated that the fast food worker job is light exertional level, the dishwasher is medium exertional level and the office cleaner is heavy exertional level.  Tr. 44-45.

Tr. 45.  The VE testified that the above-described hypothetical person could perform Miller's past relevant work of fast food worker, dishwasher and office cleaner.  Tr. 45.

Counsel for Miller then asked the VE whether a person with marked limitations in domains one through twenty identified on the Ohio Department of Job and Family Services Mental Functional Capacity Assessment form[15] could perform any of the jobs enumerated by the VE.  Tr. 46.  The VE testified that a person with such limitations would not be able to do any kind of sustained work in the competitive market.  Tr. 46.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[15] At the hearing, Counsel for Miller referred to Exhibit B28F which corresponds with the 2006 Assessments that were completed by Proehl.  Tr. 696-699.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his October 27, 2009, decision, the ALJ found that Miller had filed prior Title II and Title XVI applications on March 25, 2002.  Tr. 11.  The ALJ referred to ALJ Lawrence E. Blatnik's October 28, 2004, decision finding Miller not disabled.  Tr. 11.  Based on the ALJ's determination that there was no new and material evidence regarding the period between April 1, 2001, the alleged onset date, through October 28, 2004, the date of ALJ Blatnik's prior decision, and the *Drummond* ruling which requires application of the doctrine of *res judicata* to administrative proceedings, the ALJ determined that he was bound by ALJ Blatnik's decision for the period between April 1, 2001, the alleged onset date, through October 28, 2004.  Tr. 11-12.

The ALJ went on to find that Miller met the insured status requirements through September 30, 2005. Tr. 12, 14. The ALJ determined that Miller had not engaged in substantial gainful activity since April 1, 2001, the alleged onset date. Tr. 14. The ALJ found that Miller had the following severe impairments: dependent personality disorder; depressive disorder; and asthma. Tr. 14. The ALJ also found that Miller's recurrent kidney stones and history of hydronephrosis were not severe impairments. Tr. 14. At Step Three, the ALJ found that Miller did not have an impairment of combination of impairments that met or medically equaled one of the listed impairments. Tr. 14-15. When reaching his decision at step three, the ALJ specifically looked at Listing 3.03 regarding Miller's asthma, and Listings 12.03, 12.04 and 12.05 regarding Miller's mental impairments. Tr. 15-16.

Having found that Miller had no impairment or combination of impairments that satisfied a Listing, the ALJ established an RFC for Miller. Tr. 16. The ALJ found that Miller had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he must avoid exposure to smoke and fumes.[16] He cannot perform complex tasks, but is able to perform simple, routine tasks. He is limited to low-stress work with no production quotas or piece rate work. He cannot perform work involving arbitration, confrontation, or negotiation. He cannot perform work involving more than minimal interaction with the public, co-workers, or supervisors. He is able to understand, remember and carry out simple instructions. He is able to respond appropriate to supervision, co-workers and usual work situations. He can deal with changes in a routine work setting. He is able to make judgments commensurate with the functions of unskilled work.

Tr. 16.

Based on the testimony of the VE and in comparing Miller's RFC with the physical and mental demands of Miller's past relevant work, the ALJ determined at Step

---

[16] The ALJ relied upon state reviewing physicians Drs. Vasiloff and Freihofner to determine that Miller had the RFC to perform work at all exertional levels with the restriction that he should avoid exposure to fumes, odors, dust and air pollutants. Tr. 18, 613-620, 650. Claimant has not disputed the findings pertaining to the exertional level and limitations on exposure to smoke and fumes.

Four that Miller was capable of performing his past relevant work as a dishwasher, fast food worker and office cleaner.  Tr. 20.  For that reason, the ALJ determined that Miller had not been under a disability from April 1, 2001, through October 27, 2009, the date of the ALJ's decision.  Tr. 20.

## V. Parties' Arguments

### A.    Plaintiff's Arguments

First, Miller argues that the ALJ failed to consider his cognitive disorder and/or his schizoid personality disorder and opinion evidence related thereto at Step Two and subsequent steps of the evaluation. Pl's Brief at 10-16.

Second, Miller argues that the ALJ misapplied the *Drummond* ruling and that the misapplication led to an RFC not supported by the evidence.  Pl's Brief at 10, 16-19.   Miller argues that the ALJ misapplied the *Drummond* ruling to the period of April 1, 2001, through October 28, 2004.  Pl's Brief at 16.  Further, Miller argues, that even if the *Drummond* ruling was properly applied to the period through October 28, 2004, the ALJ also improperly applied *res judicata* to the period of time beginning on October 19, 2004, and ending on the date of the decision.  Pl's Brief at 16-19; Pl's Reply Brief at 1-4.

Contained within Miller's two main arguments are several sub-arguments: that the ALJ improperly relied on Miller's part-time work in reaching the conclusion that he could perform substantial gainful activity (Pl's Brief at 12-13; Pl's Reply Brief at 4-6); that the ALJ improperly rejected the opinions of Martin, Proehl and Spring (Pl's Reply Brief at 6-7) and that the ALJ should have more fully developed the record by requiring additional testing.[17]  Pl's Brief at 14.

---

[17] In his Reply Brief, Miller asserts that he is not arguing that the ALJ was absolutely required to order additional. Pl's Reply Brief at 7, FN 4.  However, since Miller raised the issue implicitly, the undersigned has addressed it *infra*.

**B.      Defendant's Arguments**

First, the Commissioner argues that the ALJ properly applied the *Drummond* ruling to the previously adjudicated period of April 1, 2001, through October 28, 2004, and did not apply *res judicata* to the entire claim.  Def's Brief at 10-11.

Second, the Commissioner argues that the ALJ properly considered Miller's cognitive disorder and/or schizoid personality disorder.  Def's Brief at 12-14.

Third, the Commissioner argues that the ALJ properly determined that Miller's mental impairments did not impede his ability to work full-time.  Def's Brief at 14-15.  Contrary to Miller's assertions, the Commissioner argues that the ALJ was not compelled to find that Miller could not work full-time simply because he only held a part-time job.  Tr. 14.

Finally, the Commissioner argues that the ALJ was not required to order further medical testing and ALJ's analysis and weight given to the various medical opinions was proper.  Def's Brief at 16-20.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence, or indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ properly considered and evaluated opinions regarding Miller's cognitive disorder and/or schizoid personality disorder at Step Two and subsequent steps of the sequential evaluation.**

Miller is correct that the ALJ did not find that Miller suffered from severe impairments of cognitive disorder and/or schizoid personality disorder.  However, the ALJ did find that Miller suffered from severe mental impairments at Step Two and therefore proceeded with subsequent steps in the sequential analysis.  As stated in *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987), the failure to recognize an impairment at step two does not constitute reversible error if the ALJ properly identifies all work-related limitations in the RFC finding.

The ALJ did consider Miller's cognitive and social functioning related impairments in establishing Miller's RFC.  The ALJ specifically noted that the evidence demonstrated that Miller has limitations in both social and cognitive functioning.  Tr. 19.  A review of the RFC demonstrates that said limitations were incorporated into the RFC, i.e., the RFC includes limitations on Miller's ability to perform complex tasks, on his ability to perform work involving arbitration, confrontation or negotiation and limits Miller to low stress work with no production

16

quotas or piece work rate.  Tr. 16.  Also, the ALJ accounted for Miller's social limitations.  Tr. 16.  Specifically, the RFC incorporated the following limitation: Miller cannot perform work involving more than minimal interaction with the public, co-workers or supervisors.  Tr. 19.  Based on the foregoing, the ALJ properly considered Miller's cognitive and social limitations in formulating Miller's RFC.  *See Id.*

Further, at Step Three, the ALJ thoroughly considered whether Miller's impairments or combination of impairments met Listings 3.03 (Asthma),[18] 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), 12.04 (Affective Disorders) and/or 12.08 (Personality Disorders).  Tr. 14-16.  In doing so, the ALJ reviewed the opinions of Spring and Proehl and determined that Spring's opinion that Miller's impairments medically equaled a Listing was not entitled to weight because his opinion was not supported by the evidence as a whole.  Tr. 15.  As noted by the ALJ, and as is reflected in the transcript, Spring's opinion regarding schizoid personality disorder was based on circumstantial evidence and the July 12, 2006 Assessment signed by Proehl and Martin.  Tr. 15, 42-43.  The ALJ determined that Proehl's opinion, upon which Spring relied to reach his opinion that Miller suffered from schizoid personality disorder, is inconsistent with Proehl's own treatment notes, Miller's activities and the evidence as a whole.  Tr. 15-18.  Accordingly, the ALJ determined that Proehl's and Spring's opinions are not entitled to weight.  Tr. 15, 17.  These determinations by the ALJ were proper and are supported by substantial evidence.  Neither Proehl nor Spring was a treating physician whose opinions were entitled to controlling weight.  20 C.F.R. §§ 404.1513(a); 404.1527(a); 416.913(a); 416.927(a).  Proehl was a treating source, but not an acceptable medical source under the Regulations.  20 C.F.R. §§ 404.1513(a); 416.913(a).  Although Martin, who would be an acceptable medical

---

[18] Miller does not challenge the ALJ's determination that Miller did not meet Listing 3.03.  His challenges relate to the ALJ's findings relative to his alleged mental impairments.

source, countersigned the reports signed by Proehl, Miller testified that he did not recall ever seeing Martin.  Tr. 31.   Moreover, notwithstanding the fact that Proehl was not an "acceptable medical source," the ALJ did in fact consider and weigh her reports but determined that her opinions regarding Miller's disorders and that he had marked limitations were inconsistent with her treatment notes, Miller's activities and the evidence as a whole.  Tr. 17-18.

The ALJ's decision to provide little or no weight to Spring's, Martin's and Proehl's opinions is supported by substantial evidence.  Proehl's diagnosis of schizoid personality disorder and her rating of the severity of Miller's mental illness were inconsistent over the relevant period of time.  Tr. 575, 577, 579, 581, 583, 585, 587, 657, 659, 672, 675, 678, 740, 742.   Miller relies on the 2006 Assessments prepared signed by Proehl and Martin and shown to Spring during the hearing.  Pl's Brief at 13-14.  However, as indicated *supra*, Proehl's treatments notes dated after the completion of those reports do not support a finding of schizoid personality disorder and demonstrate varying levels of severity of Miller's mental illness.  Tr. 575, 657, 659, 672, 675, 678, 740, 742.  Furthermore, Proehl's treatment notes indicate that Miller's part-time job was going all right.  Tr. 18, 574, 576, 739, 741.   Miller was living independently at the time of the hearing, cared for his own personal needs, shopped daily, and utilized public transportation.  Tr. 27-28, 32, 548, 550.   Moreover, in addition to being able to care for himself, Miller testified that at one point he was a caretaker for his great grandmother for a couple of years.  Tr. 27-28.

The ALJ's review and consideration of the specific criteria in Listings 12.03, 12.04 and 12.08 was proper and is also supported by substantial evidence.  As noted by the ALJ, in order to satisfy the "paragraph B" criteria of Listings 12.03, 12.04 and 12.08, Miller's mental impairments must result in at least two of the following: marked restriction in the activities of

daily living, marked difficulties in maintain social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 12.00.

The ALJ's findings that Miller did not satisfy the "paragraph B" criteria of the referenced Listings[19] are supported by substantial evidence.  First, the ALJ found only mild limitations in daily activities.  Tr. 15.  This finding is supported by the record evidence that Miller lived independently, cared for himself and maintained work since 2006.  Tr. 27-28, 32, 44, 548, 550. Second, the ALJ found moderate limitations in Miller's social functioning.  Tr. 15.  Although there is some notation that Miller is socially isolated, the record evidences Miller's ability to utilize public transportation and shop regularly.  Tr. 548, 550.   Additionally, he has successfully maintained employment.  Tr. 44.   Third, the ALJ found moderate limitations in Miller's ability to maintain concentration, persistence or pace.  Tr. 15-16.   This finding included consideration of reports that Miller had difficulty following spoken instructions as well as consideration of Halas' opinion[20] that Miller had no limitations in his ability to perform simple, routine tasks and moderate limitations in his ability to withstand the pressures of work is supported by substantial evidence.  Tr. 15-16, 18, 551.   Finally, the ALJ found no evidence of episodes of decompensation.  Tr. 16.   Miller's own testimony supports this finding as well as all of the ALJ's findings.  Miller testified that, aside from his asthma, he did not feel that his condition had

---

[19] To satisfy Listing 12.03 or 12.04, a claimant must satisfy not only the "paragraph A" criteria but also either the "paragraph B" or "paragraph C" criteria.  20 C.F.R. pt. 404, Subpt. P, App. 1, Listings 12.03 and 12.04.  To satisfy Listing 12.08, a claimant must satisfy the "paragraph A" criteria and the "paragraph B" criteria.  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 12.08.  There are no "paragraph C" criteria in Listing 12.08.  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 12.08.

[20] As the ALJ decision reflects, the ALJ gave weight to certain portions of Halas' opinions that were consistent with the evidence.  Tr. 18.  The ALJ gave less weight to Halas' opinions regarding Miller's social functioning because the ALJ found that the evidence as a whole indicated greater limitations in social functioning than Halas found.  Tr. 18.

worsened since October 2004.  Tr. 34-35.  He testified that medication helps with his mental functioning.  Tr. 35.  He confirmed that he had never been hospitalized for psychiatric reasons.  Tr. 36.

The ALJ also determined that Miller did not satisfy the "paragraph C" criteria of Listings 12.03 or 12.04.[21]  Tr. 16.  The ALJ specifically found that there is no evidence of episodes of decompensation, no evidence than an increase in mental demands or change in environment would cause Miller to decompensate, and no evidence that Miller is unable to function outside of a highly supportive living arrangement.  Tr. 16.  These findings demonstrate that Miller cannot satisfy the "paragraph C" criteria and are supported by substantial evidence.

Based on the foregoing, the ALJ did in fact consider both Miller's cognitive impairments and his alleged schizoid personality disorder throughout the sequential analysis.  Further, the ALJ properly discounted the opinions of Proehl, Martin and Spring.  Finally, there is substantial evidence to support the ALJ's findings that Miller's impairments or combination of impairments did not meet a Listing.

**B.       The ALJ properly applied the *Drummond* ruling.**

In *Drummond v. Comm'r of Soc. Sec*, the Sixth Circuit stated that "absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  126 F.3d 837, 842 (6th Cir. 1997).  The Social Security Administration acquiesced in this ruling.  *See* Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5 (June 1, 1998) ("AR 98-4(6).  In AR 98-4(6), the Social Security Administration stated that, "[w]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals

---

[21] Listing 12.08 has no "paragraph C" criteria.  See FN 19 *supra*.

Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Id* at *9.

A review of the ALJ's decision demonstrates that the ALJ properly applied the *Drummond* ruling.

First, the ALJ properly determined that for the previously adjudicated period, i.e., April 1, 2001 through October 28, 2004, there was no new and material evidence. Therefore, the ALJ was bound by ALJ's Blatnik's October 28, 2004 decision for that period. Miller attempts to argue that there was new evidence, not considered by ALJ Blatnik, that ALJ Beekman should have considered. The treatment notes that Miller points to as being new evidence are dated March 31, 2003, December 1, 2003, and March 1, 2004. Pl's Brief at 16; Tr. 598, 600, 603. These treatment notes predate the date of ALJ Blatnik's decision. Furthermore, Miller himself testified that since October 2004, his mental condition had not worsened. Tr. 34-35. Accordingly, the ALJ did not err in his decision that there was no new and material evidence to justify that previously adjudicated period be reviewed again.

Second, contrary to Miller's contention, ALJ Beekman did not simply accept ALJ Blatnik's decision for the unadjudicated period, i.e., October 19, 2004 through the date of the decision.[22] Tr. 12, 24. To support his argument that ALJ Beekman improperly applied *res judicata* to his entire claim, Miller asserts that ALJ Beekman's RFC is "a match for the first ALJ's [RFC] in different words." Pl's Brief at 17. Additionally, Miller asserts that the ALJ's decision to give weight to the opinions of the state agency reviewing physicians, who adopted

---

[22] During the hearing, when discussing the exhibits, the ALJ indicated that the time period for the Title II claim was October 29, 2004, to September 30, 2005, and the period of time for the Title XVI claim was March 7, 2007, to the date of the hearing. Tr. 24. No objection was raised to these statements by the ALJ. Tr. 24.

ALJ Blatnik's RFC, is evidence that the ALJ applied *res judicata* to the entire claim.  Pl's Brief at 16-17.  However, Miller fails to recognize that the ALJ gave weight to these opinions because of their consistency with the evidence.  Tr. 18-19.  The ALJ did not simply agree with the opinions because of the fact they adopted and agreed with ALJ Blatnik's RFC.  Moreover, the ALJ's decision is not based solely on the state agency reviewing physicians' opinions.  As more fully discussed throughout this Report and Recommendation, the ALJ's decision as to both the adjudicated period and unadjudicated period is proper and supported by substantial evidence.  Moreover, as indicated *supra*, Miller himself testified that his mental condition had not worsened since October 2004.  Tr. 34-35.

**C.    The ALJ properly considered Miller's part-time work history in reaching the determination that Miller was not disabled.**

The ALJ's reliance on Miller's part-time work history as support for his findings was not improper or misplaced.  As set forth in the Regulations, "work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."  20 C.F.R. §§ 404.1571; 416.971.  Further, even if the work that a claimant has done was not substantial gainful activity, it may show that the claimant is able to do more work than the claimant actually did.  *Id.*  The Commissioner is required to "consider all of the medical and vocational evidence" in a claimant's "file to decide whether or not" a claimant "has the ability to engage in substantial gainful activity."  *Id.*

As is clear from the Regulations, the ALJ was not precluded from considering Miller's work activity to reach a determination that Miller was not disabled.  In this instance, the ALJ did consider all of the medical and vocational evidence to reach his conclusion that Miller's symptoms were not of such intensity or persistence to preclude substantial gainful employment.  Tr. 17-20.  The ALJ's determination that Miller's statements regarding his inability to maintain

full-time substantial gainful activity were not credible is supported by substantial evidence. Miller himself testified that he did not have any problems at work other than his asthma.  Tr. 25. Also, he testified that he did not know why he was limited to 19 hours per week.  Tr. 25.  The ALJ did not find that Miller could perform substantial gainful activity at any and all jobs. Rather, the RFC established by the ALJ accounts for limitations in social and cognitive functioning and other noted limitations.  Tr. 16-17.  Once the RFC was established, the ALJ relied upon the VE's testimony and compared Miller's RFC to the demands of Miller's past relevant work to reach the conclusion that Miller was in fact capable of performing his past relevant work and therefore not disabled.  Tr. 19-20

**D.      The ALJ was not required to order additional testing.**

It is within the ALJ's discretion to determine whether or not additional evidence or medical expert testimony is required.  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).  In this case, Miller underwent a consultative examination, his medical records were reviewed by agency reviewing physicians, his treating source records were submitted, a medical expert testified at the hearing, Miller testified, and a vocational expert testified.  The ALJ's decision demonstrates that this testimony and evidence was reviewed and considered by the ALJ.   Accordingly, since there was sufficient evidence and testimony concerning Miller's impairments upon which the ALJ could and did evaluate Miller's mental condition and residual functional capacity, the ALJ did not abuse his discretion in not ordering additional testing.[23]  *See Foster*, 279 F.3d at 356.

---

[23] As the Commissioner notes, Miller did not specifically request that the ALJ order additional testing.  Tr. 30-31.

### V.  Conclusion and Recommendation

For the foregoing reasons, the undersigned finds that the ALJ applied the correct legal

standards and that the ALJ's decision is supported by substantial evidence.  Therefore, it is the

undersigned's recommendation that the Commissioner's decision be **AFFIRMED**.


Dated: January 25, 2012
_____
Kathleen B. Burke
United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).